

FILED
JUN - 2 2020
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**ELLIOT ROBEY,**

    **Plaintiff,**

v.                                                               CIVIL ACTION NO. 4:18-cv-128

**NATIONAL RAILROAD PASSENGER
CORPORATION,**

    **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Elliot Robey's ("Plaintiff") Motion to Enforce Settlement Agreement. ECF No. 63. On May 5, 2020, the Court held a hearing on the matter. ECF No. 73. The Court held a supplemental hearing on May 26, 2020.[1] ECF No. 76. For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

The underlying litigation involves Plaintiff's claims against Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant") for violations of the Americans with Disabilities Act, 42 U.S.C. § 1210 *et seq.*, as amended and/or Rehabilitation Act, 29 U.S.C. § 794. ECF No. 8. Plaintiff, who suffers from a genetic condition that causes him to be color deficient, worked as a train conductor for Amtrak for over twenty years. *Id.* at ¶¶ 6–8, 26. After Amtrak's physician found that Plaintiff could not pass the Federal Railroad Administration's ("FRA") approved color-vision test which is required for certification as a train conductor, Amtrak removed Plaintiff from service. *Id.* at ¶¶ 19–26. Plaintiff commenced suit against Amtrak on October 12,

---

[1] To manage an ongoing docket during the COVID-19 pandemic, both hearings were held via videoconference on Zoom.

2018, seeking reinstatement and an award for garden-variety emotional distress, compensatory and punitive damages. ECF No. 3; ECF No. 8 at ¶¶ 60–67.

Shortly before trial, the parties reached a settlement agreement before United States Magistrate Judge Lawrence R. Leonard. ECF Nos. 63-4, 68-1. The settlement agreement included a monetary award, and a requirement that Plaintiff submit to a three-doctor panel to determine whether he could pass an FRA-approved color-vision test. ECF No. 63-4 at ¶ 2. On January 7, 2020, the parties filed a stipulation of dismissal, and the case was subsequently terminated. ECF No. 62.

Plaintiff filed the instant motion on March 17, 2020. ECF No. 63. Defendant Amtrak responded to the motion on April 20, 2020.[2] ECF No. 68. Both parties filed affidavits and exhibits in support of its position. ECF Nos. 63, 67. According to the parties' affidavits and exhibits, after the settlement conference, Amtrak sent a summary of the terms defining in relevant part the definition of a "three-doctor panel." ECF No. 63-4 at ¶ 3; ECF No. 68-1 at 4; *see also* Plaintiff Exhibit ("Ex.") A. According to Amtrak's email, a three-doctor panel required that "each of the three panel doctors" determine that Plaintiff pass the test. ECF No. 63-1 at Plaintiff Ex. A. Plaintiff did not review or respond to this email. ECF No. 63-4 at ¶ 3. On December 27, 2019, Amtrak subsequently sent a draft of the settlement agreement. ECF No. 68-1 at ¶ 6; *see also* Defendant's Ex. B. On January 10, 2020, Plaintiff objected to the definition of a "three-doctor panel" noting that the parties did not agree that Plaintiff must past all three doctor examinations. ECF No. 68-1 at ¶ 8; *see* Defendant Ex. C; *see also* Plaintiff Exs. B, C. A dispute then arose regarding the conditions of the three-doctor panel. *See* Defendant Exs. D, E.

---

[2] Plaintiff filed a motion to strike Defendant's untimely response which the Court granted. ECF Nos. 69, 70. Defendant filed a Motion for Reconsideration on April 26, 2020. ECF No. 71. Upon further review, the Court granted Defendant's Motion for Reconsideration and has reviewed Defendant's response to Plaintiff's Motion to Enforce Settlement Agreement and For Attorneys' Fees and Costs. ECF No. 73.

On May 6, 2020, the Court held a hearing on the matter. ECF No. 73. During the hearing, both parties noted that the conditions of the three-doctor panel were discussed during the settlement conference but continued to dispute whether Plaintiff was required to pass all three examinations administered by the three-doctor panel. *Id.* Upon further review and consideration, the Court conducted a supplemental hearing. ECF Nos. 74, 76. After reviewing the parties' filings, exhibits, and affidavits, and hearing witness testimony, this matter is now ripe for judicial determination.

## II. LEGAL STANDARD

District courts have inherent authority, deriving from their equity power, to enforce settlement agreements. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541–42 (4th Cir.2002) (citation omitted).[3] To exercise this power, a district court must find that a complete settlement had been reached and be able to determine the terms and conditions of that settlement. *Id.*; *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991). When considering a motion to enforce a settlement agreement, general principles of contract law govern a court's inquiry. *Bradley v. Am. Household, Inc.*, 378 F.3d 373, 380 (4th Cir. 2004). The agreement does not have to be in writing to be enforceable. *Alexander v. Industries of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990). If there is a factual dispute over the existence of an agreement or the agreement's terms, or an attorney's authority to enter into the agreement, the court must hold a plenary evidentiary hearing to resolve the dispute and make findings on the issues in dispute. *Hensley*, 277 F.3d at 541–42 (citations omitted). The party seeking to enforce the settlement agreement has the burden of proving the

---

[3] A motion to enforce a settlement agreement may be accomplished within the underlying litigation without a need for a new complaint. *Id.*; *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981). Here, there is no dispute that the Court retains jurisdiction to enforce the settlement agreement. *See* ECF No. 63 at 5–6 (Plaintiff maintaining that the Court has jurisdiction to enforce the settlement); ECF No. 68 at 8 (Defendant requesting that the Court enforce the settlement agreement).

existence and the terms of the agreement. *Bralley v. Carey*, No. 3:10–CV–138, 2010 U.S. Dist. LEXIS 120164, at *5, 2010 WL 4668936 (E.D.Va. Nov. 12, 2010). After the hearing, if the court finds either that no settlement agreement was reached or the parties failed to agree "on all the material terms," then it must deny the motion to enforce and afford the plaintiff the opportunity to reopen and "proceed with his case on the merits." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18CV290, 2019 WL 5777752, at *5 (E.D. Va. Oct. 18, 2019), report and recommendation adopted, No. 2:18CV290, 2019 WL 5748450 (E.D. Va. Nov. 5, 2019).

### III. DISCUSSION

#### a. Complete Settlement Agreement

The Court first determines whether the parties reached a complete settlement agreement by applying standard contract principles under Virginia law. *Power Servs., Inc. v. MCI Constructors, Inc.*, 2 F. App'x 190, 192 (4th Cir. 2001). Under Virginia law, the essential elements of a contract require an offer, acceptance, and consideration. *Howell v. Kelly Servs., Inc.*, No. L12–CV–821, 2015 WL 2070348, at *2 (E.D.Va. May 1, 2015). Thus, to determine whether a settlement agreement was reached, "the Court looks to the objectively manifested intentions of the parties."[4] *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 162 (4th Cir.1991) (citations omitted).

Here, there is no factual dispute that the parties reached a complete settlement agreement. ECF Nos. 63, 68. On December 13, 2019, both parties appeared before United States Magistrate Judge Leonard to participate in a settlement conference. ECF No. 63-4 at ¶ 2. During that settlement conference, the parties reached a settlement agreement whereby Amtrak agreed to

---

[4] Under Virginia law, both binding oral and written contracts exists "where the parties' intention to be bound is objectively manifested even though a subsequent formal agreement is contemplated." *Golding v. Floyd*, 261 Va. 190, 194 (Va.2001)(citing *Agostini v. Consolvo*, 154 Va. 203, 212, 153 S.E. 676 (Va.1930) and finding that "[w]here the minds of the parties have met and they are fully agreed and they intend to be bound there is a binding contract, even though a formal contract is later to be prepared and signed.").

4

provide Plaintiff with a monetary award and an opportunity to become re-certified as a train conductor, in exchange for Plaintiff to release his claims against Amtrak. *Id.*; *see also* ECF No. 68 at 1. Thus, there was an offer, acceptance, and consideration. After the settlement conference, the parties began drafting the settlement agreement. ECF No. 63, 68. On January 7, 2020, both parties stipulated to dismissal. ECF No. 62. In their filings regarding the motion to enforce settlement, the parties further acknowledged the existence of a settlement agreement, and specifically noted that there is no factual dispute regarding the existence of a settlement agreement. ECF Nos. 63, 68. Thus, it is clear from the Court's record that the parties intended to enter a settlement agreement, and that a complete settlement agreement was reached.

### b. *Terms and Conditions of Settlement*

Having found that the parties formed a valid contract, the Court now turns to the terms and conditions of the settlement agreement. "To enforce a settlement agreement, a court must determine that there are sufficient facts to resolve any disputes over material terms, and that all material agreed-upon terms are sufficiently definite to enable the court to give them an exact meaning." *Howell v. Kelly Servs., Inc.*, No. 1:12-CV-821, 2015 WL 2070348, at *4 (E.D. Va. May 1, 2015) (citation omitted). Courts will enforce only those settlement terms on which the parties have reached an agreement. *Id.*

Here, the terms of the agreement required that in exchange for dismissing claims against Amtrak, Amtrak would provide Plaintiff with a monetary sum and an opportunity to be re-instated as a train conductor. ECF Nos. 63-4, 68. The parties agreed to a lump sum of money, and that in order to be re-instated as a train conductor, Plaintiff had to submit to a three-doctor panel. ECF No. 63-4; ECF No. 68. Thus, the Court finds that the settlement agreement plainly contains the material terms which are sufficiently definite for the Court to ascribe them an exact meaning.

However, the parties now dispute the conditions of the three-doctor panel. Both parties contend that the conditions of the three-doctor panel were discussed and agreed to at the settlement conference. *See* Hearing Transcript ("Hr'g Tr.") at 3:21–4:8; 7:5-11. Plaintiff contends that the parties agreed to the three-doctor panel with the understanding that in order to be re-instated, Plaintiff had to pass two out of three doctor examinations. ECF No. 63. Plaintiff argues that the requirement that Plaintiff pass all three examinations was neither agreed to, nor did it come up during settlement negotiations. *See* Hr'g Tr. 11:9-15. Amtrak, however, contends that Plaintiff agreed to pass all three doctor examinations, including the exam administered by Amtrak's Medical Director. ECF No. 68 at 6–7. Amtrak contends that this requirement of unanimity was raised not only with Plaintiff, but also with the Magistrate Judge. Hr'g Tr. 7:2-11.

During the supplemental hearing on the matter, the Court inquired about whether the Magistrate Judge recalled any discussion regarding the requirement that all three doctors find that Plaintiff passed the administered examination. ECF No. 76. Magistrate Judge Leonard testified that he did not recall any discussion about unanimity at any point during the settlement conference. Supplemental Hr'g Tr. at 5:2-11. Magistrate Judge Leonard also testified that the requirement for a unanimous decision did not come up in any of the settlement conferences he previously conducted with the parties. Supplemental Hr'g Tr. 8:1-7.

After considering all the evidence, the Court finds that the parties' agreed to a three-doctor panel requiring Plaintiff to pass two out of the three examinations in order to be reinstated as a train conductor for Amtrak. The Court finds that the parties agreed that the three-doctor panel would consist of one doctor appointed by each of the parties, and a third doctor chosen by both parties. *See* Plaintiff's Ex. A; Defendant's Ex. A. The Court also finds that the parties agreed to a three-doctor panel because there was a dispute between Amtrak's doctor and Plaintiff's doctor

about whether he could pass the FRA-approved color-vision test. *See* ECF No. 8 at 30–31 (noting the difference of opinions between Amtrak and a specialist from Harvard about whether Plaintiff could perform the essential functions of a train conductor). The parties therefore opted for the opinion of a neutral doctor to resolve the question of whether Plaintiff should be reinstated, in the case of a split decision among the physicians chosen by each party. *See* ECF No. 63-1.

Though Amtrak argues that unanimity was required for the three-doctor panel, this requirement finds no support in the record. *See* Hr'g Tr. 11:9-15 (Counsel for Plaintiff noting that the requirement for unanimity was not conveyed during negotiations); Supplemental Hr'g Tr. at 5:2-11 (Magistrate Judge Leonard noting that to the best of his recollection "there was no discussion about unanimity"). Amtrak suggests that the email Defendant sent defining a three-doctor panel and Plaintiff's lack of objection to this email is proof that Plaintiff agreed to a unanimous decision by the three-doctor panel. ECF No. 68 at 7–8. However, the agreement as to the conditions of the three-doctor panel were established during the settlement conference, not by the term sheet.

Furthermore, the Court is persuaded by common sense. The underlying litigation commenced because Plaintiff failed to obtain approval from Amtrak's doctor. *See* ECF Nos. 3, 8. As is customary, a three-doctor panel, with a neutral doctor appointed by both parties, is often useful to resolve a split decision. If a three-doctor panel required the decision of only one physician, there would be no need in having the other two doctors on a panel. Defendant now wants the Court to accept as true that Plaintiff, who seeks reinstatement as relief, would agree to a condition that each of the three panel doctors determine that Plaintiff pass the test, thereby subjecting himself to a higher burden. The Court is not convinced. Thus, Plaintiff has met his burden in proving that in agreeing to a three-doctor panel, the parties' agreed that Plaintiff could

7

be reinstated if he passes two of the three doctor administered examinations. The fact that Amtrak now has second thoughts about the results of its valid contract does not justify setting aside an otherwise valid agreement. *See Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997).

### c. Attorneys' Fees and Costs

In addition to the motion to enforce settlement, Plaintiff requests attorneys' fees and costs. ECF No. 63 at 6–7. Generally, each party bears its own costs of litigation unless statutory authority provides otherwise or an exception to the rule applies. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245–47 (1975). A district court may grant attorneys' fees against a losing party when it has acted in bad faith, vexatiously, or wantonly. *Id.* Upon further review, the Court finds that there is insufficient evidence demonstrating that Defendant acted in bad faith, vexatiously, or wantonly. Therefore, Plaintiff's request for attorneys' fees and costs is **DENIED**.

### IV. CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion to Enforce Settlement is **GRANTED**. Plaintiff's request for attorneys' fees and costs is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
June 2, 2020

/s/
Raymond A. Jackson
United States District Judge